AO 106 (Rev. 04/10) Application for a Search Warrant

FILED
UNITED STATES DISTRICT COURT
~~LAS CRUCES, NEW MEXICO~~

FEB 23 2026

MITCHELL R. ELFERS
CLERK OF COURT

## UNITED STATES DISTRICT COURT
for the
District of New Mexico

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*
a navy-blue Motorola Cellular Telephone

)
)
)
)
)
)

Case No. 26 372 MR

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)* a navy-blue Motorola Cellular Telephone (Subject Telephone), more fully described in Attachment A, which is attached and fully incorporated,

located in the _____ District of _____ New Mexico _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, which is attached and incorporated.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 (a)(1)(A)(ii) (Transporting) | knowing or in reckless disregard of the fact that an alien, had come to, entered, or remained in the United States in violation of law, transport, or move or attempt to transport or move such aliens within the United States by means of transportation |

The application is based on these facts:
See attached affidavit, Attachment C, attached and incorporated fully by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Armando Esparza, Border Patrol Agent
*Printed name and title*

Sworn to before me ~~and signed in my presence.~~ BY PHONE

Date: 2/23/26

_____
*Judge's signature*

City and state: Las Cruces, New Mexico

G. J. Gouratt, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

The affidavit, *see* **Attachment C**, is submitted in support of the warrant to search and seize information, more fully described in **Attachment B**, contained in the following electronic device (referred to in **Attachment B** and **Attachment C** as the Subject Telephone):

### Subject Telephone

The property to be searched is a navy-blue Motorola cellular telephone (hereinafter "Subject Telephone") which was seized from Carlos Francisco LOERA-MERAZ after his arrest on January 21, 2026. Subject Telephone is currently in the custody of the United States Border Patrol, at their station in Deming, New Mexico.

 

## ATTACHMENT B

### PARTICULAR THINGS TO BE SEIZED/INFORMATION TO BE RETRIEVED

All records or information stored on Subject Telephone described in **Attachment A** that relate to violations of 8 USC § 1324, including:

1. Digital, cellular, direct connect, and/or other phone numbers, names, addresses, and other identifying information of co-conspirators and other associates of the user of the Subject Telephone;

2. Digital, cellular, direct connect, and/or other phone numbers dialed from, which contacted, or which are otherwise stored on, the Subject Telephone, along with the date and time each such communication occurred;

3. Any message logs or messages, whether sent from, to, or drafted on, the Subject Telephone, along with the date and time each such communication occurred;

4. The content of voice mail messages stored on the Subject Telephone, along with the date and time each such communication occurred;

5. Photographs or video recordings, along with the date and time each such photograph or video recording was created;

6. Information relating to the schedule, whereabouts, or travel of the user of the Subject Telephone;

7. Information relating to other methods of communications utilized by the user of the Subject Telephone and stored on the Subject Telephone;

8. Bank records, checks, credit card bills, account information and other financial records; and

9. Evidence of user attribution showing who used or owned the Subject Telephone, such as logs, phonebooks, saved usernames and passwords, documents, and internet browsing history.

As used above, the terms "records" and "information" include all items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer of electronic storage (such as flash memory or other media that can store data) and any photographic form.

**ATTACHMENT C**
**AFFIDAVIT IN SUPPORT OF ORDER AUTHORIZING**
**SEARCH WARRANT**

I, Armando Esparza, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1.      I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search of the cellphone described in Attachment A, which is currently in law enforcement custody, and the extraction of the electronically stored information described in Attachment B.

**AGENT BACKGROUND**

2.      I am a U.S. Border Patrol Agent, and I have been a federal law enforcement officer since 2006 with the U.S. Border Patrol, which is a division of U.S. Customs and Border Protection.  I am currently assigned to the Disrupt Unit at the Deming, New Mexico Border Patrol Station.  I am empowered, as a Border Patrol Agent, to affect arrests, conduct searches, and perform seizures for violations of various federal laws.  I have participated in numerous alien smuggling investigations, either as a case agent or in various support roles.  Additionally, I have arrested numerous individuals involved in alien smuggling cases stemming from Mexico into the United States.

3.      I am familiar with the facts and circumstances of this investigation as a result of my personal participation in the investigation, discussions with other agents involved in the investigation, and review of reports written by myself, other agents, and other evidence and materials concerning the investigation.

1

4.      Through my training and experience, I know that alien smugglers often maintain one or more cellular or smart telephones (devices) they use to further their smuggling schemes. Alien smugglers and alien smuggling organizations use these devices to communicate operational directives and information concerning the organization's illegal activities to other members. Based on my training and experience, I know that timely communication of information between organizational members is critical to the overall success of an organization's illegal activities. This information is critical because members must provide instructions for the smuggling and transportation of the people being smuggled.

5.      I further know from my training and experience that a cache of information, including dialed, received, or missed calls and messages sent, received, or placed in draft status, can be found on these devices. I know that the identities and telephone numbers of other participants in the alien smuggling activity are often maintained in the contact lists of these devices. In my experience, alien smugglers also use these devices to take and store photographs or video recordings of themselves with their co-conspirators and with contraband, including smuggled illegal aliens, narcotics, currency, and firearms. Alien smugglers also use the GPS function or applications that log location information, which can reveal their whereabouts when they conducted or arranged alien smuggling activities or travel. In my experience, the devices used by alien smugglers often contain evidence relating to their alien smuggling activities, including but not limited to, contact lists, lists of recent call activity, stored text, chat, and voice mail messages, photographs and video recordings, GPS and location information, and financial accounts and records.

6.    I also know that some devices utilize subscriber identity module ("SIM") cards. A SIM card is a chip that is used to authenticate a device to a network. The SIM card generally contains subscriber information and authentication information, and it may contain contacts and encryption information. The portability of SIM cards in some devices allows a user to easily change devices, while maintaining the same telephone number, by removing the card from one device and inserting it into another. While SIM cards may have the capability to store some of the evidence described above, the storage capacity of devices tends to far exceed that of SIM cards. Which information is stored on the SIM card, on the device, or in both locations varies and depends on variables such as the user-defined settings on the device and the memory capacity of the SIM card. Accordingly, information pertaining to alien smuggling activity may be located on the SIM card itself, as well as the device in which the SIM card was inserted.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

7.    The property to be searched is a navy blue Motorola cellular telephone (the Subject Telephone) and any SIM card or other storage media contained therein.

8.    The Subject Telephone was seized from Carlos Francisco Loera-Meraz (the Defendant) on January 21, 2026, after his arrest by United States Border Patrol agents in the District of New Mexico for alien smuggling activity involving the transportation of illegal aliens.

9.    The Subject Telephone is currently secured at the Deming Border Patrol Station, in the secure vault. The Subject Telephone has been maintained in law enforcement custody since seizure and based on the manner in which it has been secured, I believe its contents remain,

3

to the extent material to this investigation, in substantially the same condition as when it was seized.

10.    The Subject Telephone is described in further detail in Attachment A. The property to be searched is a navy-blue Motorola cellular telephone.

11.    The Subject Telephone is locked and passcode protected.

12.    The applied for warrant would authorize the forensic examination of the Subject Telephone for the purpose of identifying electronically stored data particularly described in Attachment B.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

13.    Through my training and experience, I know that alien smugglers often maintain one or more cellular telephones that they use to further smuggling schemes. Alien smugglers and alien smuggling organizations use cellular telephones to communicate operational directives and information concerning the conduct of illegal activity, including pickup coordination, route planning, avoiding law enforcement, and instructions about where to transport illegal aliens.

14.    I know from my training and experience that cellular telephones commonly contain stored data reflecting communications and activity, including dialed, received, and missed calls, text messages sent and received (including drafts), contact lists, photographs, videos, and application data. In my experience, smugglers and drivers also use location services and navigation applications that can store GPS and location history information relevant to where the device traveled.

15.    I also know that many devices use SIM cards. A SIM card is a chip used to authenticate a device to a network. SIM cards can contain subscriber information and may store

4

contacts or other data. Which information is stored on a SIM card, on the device, or in both locations varies depending on device settings and memory capacity. Accordingly, evidence pertaining to alien smuggling activity may be located on the SIM card, the device, or both.

16.     Based on my training and experience, cellular telephones used in alien smuggling activity often contain evidence relating to alien smuggling, including but not limited to contact lists, call logs, stored text and chat messages, voice mail messages, photographs and videos, location and navigation history, and evidence of payment, debt, or compensation arrangements.

## PROBABLE CAUSE

17.     Because this affidavit is submitted for the limited purpose of establishing probable cause, I have not included every known fact regarding the investigation. I have instead set forth only those facts that are pertinent and that I believe are necessary to establish probable cause to search the Subject Telephone for evidence of violations of 8 U.S.C. § 1324.

18.     On January 21, 2026, Border Patrol Agent (BPA) 1 was patrolling New Mexico State Road 26 (NMSR 26) when he observed a white Chevrolet Malibu displaying a New Mexico license plate traveling eastbound. NMSR 26 has been historically used by alien smuggling organizations to transport illegal aliens and other contraband by circumventing the Border Patrol checkpoint located on Interstate 25. NMSR 26 provides a route toward Albuquerque with no immigration checkpoints.

19.     Through surveillance and investigative work, BPAs had associated the Malibu with an individual known to agents to be involved in alien smuggling operations in the Deming area of responsibility. BPAs had observed the Malibu parked at that individual's residence. On

5

December 27, 2025, BPA 1 observed the Malibu in circumstances believed to be consistent with an alien smuggling scheme. As BPA 1 attempted to position his white unmarked Ford Explorer, the Malibu fled at a high rate of speed. BPA 1 was unable to catch up, and another BPA was unable to assist due to the Malibu's speed. The Malibu took dirt roads and successfully evaded agents. Because the Malibu was associated with the known smuggling target, BPA 1 went to the known address of that target and regained visual of the Malibu, but only briefly before it again fled the area. On January 21, 2026, earlier that same day and prior to the events described below, BPA 1 observed the Malibu at a gas station on Gold Avenue in Deming, New Mexico, and observed a male driving it. Based on this investigative history and his earlier observation of the Malibu in Deming on January 21, 2026, BPA 1 recognized the Malibu when he later encountered it on NMSR 26 and suspected it was being used in alien smuggling activity. Agents also know, based on training and experience, that smugglers use areas of Deming for staging while scouts monitor NMSR 26 and report Border Patrol presence.

20.     Later, on January 21, 2026, while patrolling NMSR 26, BPA 1 again observed the Malibu traveling eastbound and requested record checks through his government issued radio. The Law Enforcement Information Specialist informed BPA 1 that the vehicle was registered to a female in Albuquerque, New Mexico. As BPA 1 positioned his vehicle behind the Malibu, he observed it swerving from side to side as if the driver was paying more attention to BPA 1's location than the road ahead. The Malibu also appeared to be riding low in the rear as if heavily loaded. Based on (a) the investigative information described in paragraph 3, (b) the Malibu's presence on NMSR 26, and (c) alien smuggling indicators, BPA 1 decided to initiate a vehicle stop for immigration purposes.

21.     BPA 1 initiated an investigatory stop related to suspected alien smuggling by activating his emergency equipment, including red and blue lights and a siren. The Malibu failed to yield and immediately accelerated, continuing eastbound on NMSR 26 toward Hatch, New Mexico. While BPA 1 pursued the Malibu, the agent reached speeds of approximately 95 miles per hour. During the pursuit, BPA 1 observed the driver driving erratically, including increasing speed, swerving in and out of lanes, and driving on the shoulder of oncoming traffic. BPA 1 ultimately terminated the pursuit for safety reasons.

22.     BPA 2 was in a separate vehicle and was attempting to catch up to BPA 1, who was already in pursuit. BPA 2 heard BPA 1 running checks and heard the pursuit over the radio and responded to BPA 1's location. After BPA 1 terminated the pursuit, BPA 1 and BPA 2 continued traveling in the last known direction of travel of the Malibu to check whether the vehicle had crashed or whether occupants had bailed out. BPA 2 advised the Law Enforcement Information Specialist (LEISS) over the radio that BPA 1 and BPA 2 would continue traveling in the last known direction of travel of the Malibu for that purpose. While traveling eastbound on NMSR 26, BPA 1 observed the Malibu traveling in the opposite direction at a high rate of speed. BPA 1 advised BPA 2 of the Malibu's new direction of travel, and BPA 2 confirmed that the vehicle was the one that had failed to yield. BPA 2 observed what appeared to be a different driver: a Hispanic male driver with a mustache. BPA 1 notified responding agents that the Malibu was traveling westbound.

23.     Additional agents, BPA 3 and BPA 4, assisted and deployed a controlled tire deflation device on NMSR 26 west of Cookes Canyon Road, and disabled the Malibu. The driver

7

and occupants bailed out. After a brief foot chase, agents apprehended the driver, later identified as the Defendant.

24. Agents also apprehended five passengers from the Malibu. The passengers admitted they were citizens of Mexico who were illegally present in the United States. The Defendant and the passengers were arrested and transported to the Deming Border Patrol Station for processing.

25. After being advised of his Miranda rights, the Defendant admitted he was transporting illegal aliens to Albuquerque, New Mexico to make money to pay off a debt for being smuggled into the United States. The Defendant stated he was offered this work by a smuggler in Mexico who put him in contact with associates working in the United States.

26. The Defendant stated he had to pick up the group at a mobile home in Columbus, New Mexico, the evening before his arrest. The Defendant stated that the vehicle he used to pick up the illegal aliens was a black Jeep that was left at his residence by the smuggler.

27. The Defendant stated he would know how to get to his destination in Albuquerque because he used his phone, which would tell him how to get to those locations. The Defendant also admitted he previously transported four illegal aliens to Albuquerque, was paid an undisclosed amount for that prior load, and knew he was transporting illegal aliens.

28. Based on the Defendant's statements and the circumstances of this offense, there is probable cause to believe the Subject Telephone contains evidence of violations of 8 U.S.C. § 1324, including communications with the organizer or associates, call logs and messages

reflecting coordination and instructions, GPS and location data corroborating pickup and drop off locations and travel routes, and evidence of payment or debt arrangements.

29.    Based on the information contained in this affidavit, there is probable cause to believe the Subject Telephone contains evidence of violations of 8 U.S.C. § 1324, including transporting illegal aliens and conspiracy to transport illegal aliens.

## ACESS TO A LOCKED DEVICE

30.    I know from my training and experience that many cellular telephones are protected by a passcode and or biometric features and may encrypt stored data in a manner that prevents access through the user interface without the passcode.

31.    The Subject Telephone appears to be locked, and passcode protected. If the passcode is not available, agents will attempt to access and extract data from the Subject Telephone using specialized law enforcement forensic tools and techniques. These techniques may include logical extraction, file system extraction, and other forensic acquisition methods available to law enforcement. If necessary, the Subject Telephone may be transported to and processed by a qualified digital forensics unit for additional forensic processing. The Subject Telephone may need to remain in law enforcement custody for the time reasonably necessary to complete the forensic extraction.

32.    Any extracted data will be reviewed only for information within the scope of the warrant and the categories of data described in Attachment B.

9

## ELECTRONIC STORAGE & FORENSIC ANALYSIS

33.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, items viewed through the internet and application content are often stored for some period of time on a device. This information can sometimes be recovered with forensic tools.

34.    Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described in this affidavit, but also forensic evidence that establishes how the Subject Telephone was used, the purpose of its use, who used it, and when. There is probable cause to believe this forensic electronic evidence might be on the Subject Telephone because:

35.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file.

36.    Forensic evidence on a device can also indicate who has used or controlled the device. This user attribution evidence is analogous to the search for indicia of occupancy while executing a search warrant at a residence.

37.    A person with appropriate familiarity with how an electronic device works may, after examining forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

38.    The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Whether data stored on a device is evidence may depend on other information stored on the device and the

10

application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

39. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, it may be necessary to establish that a particular item is not present on a storage medium.

40. Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Subject Telephone consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## RETENTION OF FORENSIC IMAGE

41. The government may retain a forensic image of the Subject Telephone or extracted data for reasons including proving authenticity of evidence, maintaining chain of custody, responding to allegations of data corruption, and refuting claims of fabrication, tampering, or destruction of data.

## MANNER AND TIME OF EXECUTION

42. Because this warrant seeks permission to examine a device already in law enforcement custody, execution of this warrant does not involve physical intrusion onto any premises. I submit there is reasonable cause for the Court to authorize execution of the warrant at any time of the day or night.

## CONCLUSION

43.     Based on the above information, there is probable cause to believe that evidence

of violations of 8 U.S.C. § 1324 are located in the Subject Telephone.  Therefore, I respectfully

request that this Court issue a search warrant for the Subject Telephone, more particularly

described Attachment A, authorizing the seizure and examination of the items described in

Attachment B.

Respectfully submitted,

Armando Esparza
U.S. Border Patrol Agent

Electronically submitted and telephonically
sworn to before me on February _23/_ , 2026:

United States Magistrate Judge

12